J. S69026/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
               :      PENNSYLVANIA
               :
               :
      v.         :
               :
KEVIN FORDE,         :
               :
      APPELLANT  :   No. 446 MDA 2016

Appeal from the PCRA Order February 17, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000057-2010

BEFORE: STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY DUBOW, J.:      **FILED JANUARY 25, 2017**

Appellant Kevin Forde appeals from the Order dismissing his first Petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. He challenges the effectiveness of plea counsel for failing to inform him of the certainty of his deportation. We affirm.

Appellant was born in Guyana, South America, and has lived in the United States as a legal resident for most of his life. In December 2009, the Commonwealth charged Appellant with Simple Assault, Aggravated Assault, and Attempted Murder.[1] The Commonwealth also filed a parole detainer. In

---

[*] Retired Senior Judge Assigned to the Superior Court.

[1] The simple assault charge arose from Appellant's entering the home of the mother of one of his children on December 5, 2009, and punching her several times as she slept. Two days later, the Aggravated Assault and

addition, Appellant had a detainer from U.S. Immigration and Customs Enforcement ("ICE") as a result of a 2004 Simple Assault charge. Brian Platt, Esq., from the Dauphin County Public Defender's office, represented Appellant.

On October 25, 2010, Appellant pled guilty to one count each of Simple Assault and Aggravated Assault in exchange for the Commonwealth dropping the Attempted Murder charge, withdrawing the parole detainer, and recommending an aggregate sentence of five to ten years' incarceration. Prior to entering the negotiated plea, Appellant participated in a full colloquy, acknowledging that as a "potential collateral consequence" of pleading guilty, "there may be consequences including the potential for removal from the United States as a result of a conviction for a felony." N.T. Guilty Plea, 10/25/10, at 6-7. The court accepted Appellant's guilty plea as knowing and voluntary, and sentenced him in accordance with the plea agreement. Appellant did not appeal or challenge the validity of his plea.

On March 3, 2015, Appellant filed a *pro se* PCRA Petition, alleging ineffective assistance of plea counsel because he learned for the first time at a status hearing before an immigration judge on January 21, 2015, that he was subject to automatic deportation upon his release from incarceration.

---

Attempted Murder charges occurred as a result of Appellant's getting into a fist fight with another man, drawing a knife with a four-inch blade, and stabbing the man seven times, including four times in his back.

He averred that because of counsel's omission, his plea was not knowingly entered. The PCRA court appointed counsel, and Appellant filed a supplemental Petition asserting that his Petition falls within the PCRA's timeliness exception provided in Section 9545(b)(1)(ii).

The PCRA Court held an evidentiary hearing at which Appellant testified that he and Attorney Platt discussed "the immigration issue" prior to his entering the guilty plea, but "we didn't discuss that I was facing mandatory deportation." N.T. PCRA Hearing, 9/3/15, at 18. Attorney Platt testified that as soon as he learned that Appellant had an ICE detainer, he informed Appellant that there was "a real possibility that you could be deported." *Id*. at 25. He admitted that he had not explained to Appellant that he was subject to automatic or mandatory deportation, but stated that he never told Appellant that deportation "couldn't happen, [or] that it was an impossibility[.]" *Id*.

On February 17, 2016, the PCRA Court denied the Petition. Appellant timely appealed.

Appellant raises the following issue for our review:

Did the PCRA court err or abuse its discretion when it denied Appellant's petition for relief even though the court found that Appellant's plea counsel had failed to advise Appellant of the collateral consequence of his guilty plea to the offense of aggravated assault, that being presumptively mandatory deportation?

Appellant's Brief at 4.

When reviewing the denial of PCRA Petition, "we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). Credibility determinations made by the PCRA court are binding on this Court where there is support in the record for the determination. **Commonwealth v. Timchak**, 69 A.3d 765, 769 (Pa. Super. 2013).

Before addressing the merits of Appellant's claims, we must first determine whether we have jurisdiction to entertain the underlying PCRA Petition. Under the PCRA, any Petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S. § 9545(b)(1). A Judgment of Sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. **Commonwealth v. Albrecht**, 994 A.2d 1091, 1093 (Pa. 2010).

Pennsylvania courts may consider an untimely PCRA petition, however, if the petitioner pleads and proves one of three exceptions set forth in 42 Pa.C.S. § 9545(b)(1). Section 9454(b)(1)(ii), the section invoked by Appellant, provides that a petition for post-conviction relief may be reviewed if "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). A petitioner asserting a timeliness exception must raise the claim within 60 days of learning of the new facts. *See, e.g., Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) (reviewing specific facts that demonstrated the claim had been timely raised within 60-day timeframe).

In the instant case, Appellant learned at a hearing before an immigration judge on January 21, 2015, that because of his 2010 aggravated assault conviction, his deportation would be automatic upon his upcoming release from prison.[2] He filed his *pro se* PCRA petition within sixty days of learning of that consequence. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

Although Appellant raised the claim within 60 days of his hearing before the immigration judge, it is arguable that Appellant could have learned of the mandatory nature of his deportation consequence "by the exercise of due diligence" so that his claim does not satisfy the requirements

---

[2] *See* 8 U.S.C. §§ 1101(a)(43)(F); 1227(A)(2); 1228(A)(3)(a) (providing for deportation of an alien convicted of an aggravated felony, an offense carrying a presumption of deportability on an expedited basis).

of Section 9545(b)(1)(ii). Appellant had some familiarity with the deportation possibility, not only because he was informed that there was a possibility of deportation in 2010, but also because he had an ICE detainer in connection with a 2004 crime. It is, thus, debatable that, even as an incarcerated individual, Appellant could have "ascertained with the exercise of due diligence" the fact that he would be subject to mandatory deportation.

Notwithstanding that observation, we consider whether Appellant's ineffectiveness claim has merit. In analyzing claims of ineffective assistance of counsel, we presume that counsel was effective unless the PCRA petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Here, Appellant avers that pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010), his plea counsel gave "insufficient advice to Appellant regarding

the collateral consequence of a conviction for aggravated assault[.]" Appellant's Brief at 8. He avers that because the federal Immigration Code clearly lists an "aggravated felony" as a presumptively deportable offense, counsel should have advised Appellant that "his deportability was a virtual certainty," not that is was a "possibility." *Id.* at 8-9.

In *Padilla*, decided by the U.S. Supreme Court in March 2010, plea counsel failed to advise Padilla of the deportation consequence of pleading guilty, and advised him that he did not need to worry about his immigration status because he had been living legally in the United States for forty years. The U.S. Supreme Court reversed the denial of post-conviction relief, holding that in order "to ensure that no criminal defendant whether a citizen or not is left to the mercies of incompetent counsel[,] . . . counsel must inform her client whether his plea carries a risk of deportation." *Padilla, supra* at 374 (quotation marks and internal citation omitted). The Court recognized that immigration law can be complex and is a legal specialty of its own, so that a "criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id*. at 369. The Court then remanded the case for a determination of whether Padilla had been prejudiced by counsel's failure to inform his client of the risk of deportation.

Pennsylvania subsequently interpreted and applied the **Padilla** holding in a number of cases. Most relevant to this appeal, in **Commonwealth v. Escobar**, 70 A.3d 838 (Pa. Super. 2013), a case involving drug offenses that render an alien offender presumptively deportable, this Court interpreted the **Padilla** language, as follows:

> We do acknowledge that parts of the **Padilla** opinion contain language arguably supporting the notion that plea counsel in some cases may have a duty to provide a rather certain indication of deportation. . . .
>
> Even still, we think the [C]ourt's overall emphasis was that the deportation statute in question makes most drug convicts subject to deportation in the sense that they certainly become deportable, not in the sense that plea counsel should know and state with certainty that the federal government will, in fact, initiate deportation proceedings.
>
> Ultimately, when announcing its holding, the **Padilla** court opined, "We now hold that counsel must inform the client whether the plea carries a risk of deportation."

*Id*. at 842 (internal citations omitted). **See also Commonwealth v. Wah**, 42 A.3d 335 (Pa. Super. 2012) (rejecting ineffectiveness claim where counsel informed the defendant that there could be deportation consequences as a result of his plea and suggested that he consult with immigration counsel); **Commonwealth v. McDermitt**, 66 A.3d 810, 814 (Pa. Super. 2013) (holding that **Padilla** requires counsel to inform a non-citizen defendant of the risk of deportation, not that deportation is a certainty).

In the instant case, the record is clear that Appellant was informed that his plea carried a risk of deportation. His plea colloquy outlining the terms of his negotiated plea agreement demonstrated this fact:

> Commonwealth: Now there are potential collateral to a guilty plea. It is my understanding that you are a foreign national.
>
> Defendant: Yes.
>
> Commonwealth: And do you understand that there may be consequences including the potential for removal from the United States as a result of a conviction for a felony:
>
> Defendant: Yes.
>
> Commonwealth: Now knowing that, you still wish to enter the pleas of guilty, right?
>
> Defendant: Yes.

N.T. Guilty Plea at 6-7.

Appellant's counsel then provided some background information on Appellant since he had waived the presentence investigation, stating, *inter alia*, "[w]e have discussed the immigration issue and he is aware of the consequences that he is facing regarding that issue." *Id*. at 9.

At the PCRA hearing, Appellant acknowledged that he knew that there was a chance he would be deported, and provided some inconsistent statements about his conversations with plea counsel on the topic. He testified that plea counsel had told him that it was not likely he would be deported because he had been in the country so long and was, at that time, married and had children. *See* N.T. PCRA Hearing, 9/3/15, at 6. Plea

counsel testified that he had informed Appellant, upon discovering the ICE detainer, that "there is a possibility that you could be deported if you are convicted of any or all of these offenses or if you plead guilty. . . .I didn't advise him that it was any type of automatic or mandatory deportation so that is true." *Id*., at 24-25. Counsel denied ever telling Appellant that deportation "couldn't happen" or "that it was an impossibility." *Id*. at 25. He also testified that he was aware of *Padilla* when it was decided in March 2010, and he would advise "in every case" where he had a client with an immigration detainer "that there is a possibility of deportation." *Id*. at 25-27.

The PCRA court determined that counsel's testimony was more credible than Appellant's, and that Appellant knew and understood when he pled guilty that deportation was a possible consequence of his conviction. *See* PCRA Court Opinion, dated 2/1716, at 6. After providing a comprehensive analysis of applicable statutory and case law, the PCRA court ultimately concluded that Appellant had not proven that plea counsel had provided ineffective assistance. The court opined:

> Because I believe the deportation consequence in this case was truly clear, and the immigration law succinct and straightforward, counsel's duty was to provide [Appellant] correct advice, which this court would interpret to require he advise [Appellant] that at the least, his deportation upon conviction was a near certainty or that he would be conclusively presumed deportable. I would thus have held that counsel's advising of the mere possibility of deportation to have been ineffective.
>
> * * *

> This court is bound, however, by the Superior Court holdings[.] As such, I am constrained to hold that because counsel's advice was not deficient under **Wah**, **McDermitt**, and **Escobar**, [supra,] [Appellant] has not established counsel was ineffective and[,] as such, his plea was voluntary, knowing and intelligent.

PCRA Ct. Op., at 19-20 (heading omitted).

We agree with the PCRA Court's legal analysis and adopt it as our own.

**See id**. at 5 - 20.[3] In addition, our review of the record supports the PCRA court's determination and we conclude its Opinion is free of legal error. Accordingly, we affirm the denial of PCRA relief.

The parties are directed to annex a copy of the PCRA court's February 17, 2016 Opinion to all future filings.

Order affirmed.

Judge Stabile joins the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2017

---

[3] We note further that Appellant does not allege that he is innocent of the crimes to which he pled guilty or that, but for counsel's omission, he would have taken his chances at trial on all three charges, including the attempted murder charge. He has, thus, not satisfied the prejudice prong of the ineffectiveness test. **See Fulton**, **supra**.

ORIGINAL

COMMONWEALTH OF 2016 FEB 17  PM 2: 05: IN THE COURT OF COMMON PLEAS
PENNSYLVANIA : DAUPHIN COUNTY, PENNSYLVANIA
                                              :
            v.       PENNA           : No. CP-22-CR-00057 - 2010
                                     : No. CP-22-CR-00526 - 2010
                                              :
KEVIN A. FORDE                       : PCRA Petition

**February 17, 2016**

## OPINION

Before the court is Kevin Forde's petition under the Post-Conviction Collateral Relief Act (PCRA).[1] Petitioner pled guilty in 2010 and received a negotiated sentence of five to ten years. Petitioner, who was born in Guyana, South America, and has spent most of his life in the United States, requests that his plea be withdrawn on the basis that his plea attorney was ineffective under the United States Supreme Court case Padilla v. Kentucky for failing to inform him that he would be deported upon the expiration of his state sentence.[2] Following evidentiary hearings on petitioner's claims and upon consideration of the briefs filed, I am constrained to deny his request for post-conviction relief for the reasons set forth below.

## Background

On October 25, 2010, petitioner agreed to plead guilty to one count of aggravated assault and one count of simple assault in exchange for an aggregate sentence of five to ten years. As part of the plea, the Commonwealth agreed to drop an attempted murder charge and to withdraw a parole detainer on a 2004 simple assault charge. (N.T. Guilty Plea at 3, 7) Petitioner was represented by an attorney from the Dauphin County Public Defender's Office.

The charges arose from two separate incidents. The simple assault occurred December 5, 2009, when petitioner entered the home of a woman with whom he had a child, and punched her several times while she slept. (N.T. Guilty Plea 7) The aggravated assault charge arose from an incident that occurred just two days later. While petitioner was picking up his wife from the Kaplan Institute in Harrisburg, got into a fist fight with another man during which petitioner

---

[1] 42 Pa.C.S.A. § 9541-9551.
[2] 559 U.S. 356 (2010).

25-20

drew a concealed knife with a four-inch blade and stabbed the man seven times, including four times in his back, causing him life-threatening injuries. (N.T. Guilty Plea 7-8)

During the course of the colloquy outlining the terms of the negotiated guilty plea agreement, the prosecutor questioned petitioner as follows:

> Commonwealth: **Now there are potential collateral consequences to a guilty plea. It is my understanding that you are a foreign national.**
>
> Defendant: **Yes.**
>
> Commonwealth: **And do you understand that there may be consequences including the potential for removal from the United States as a result of a conviction for a felony?**
>
> Defendant: **Yes.**
>
> Commonwealth: Now knowing that, you still wish to enter the pleas of guilty, right?
>
> Defendant: Yes.

(N.T. Guilty Plea at 6-7) (emphasis added)

Petitioner's plea counsel thereafter provided background information about petitioner since he had waived a presentence investigation, as follows:

> Mr. Forde is 30 years of age. He does have his GED. Your Honor, he is married. He has three kids, 12, 9, and 1 year old. He does support those children and he does visit with them regularly. In addition he was working two jobs. He was working as a partner with Sad's Seafood in Harrisburg. In addition, he had his own cleaning business, Q and T Cleaning, which he was working as well.
>
> Since he has been incarcerated in Dauphin County Prison he has participated in violence intervention programs, victim awareness, and also addictive compulsive behavior classes. **We have discussed the immigration issue and he is aware of the consequences that he is facing regarding that issue.**
>
> In addition, Mr. Forde would like the Court to be aware that it wasn't his intention to go there and kill Mr. Mitchell on that day. Kevin was attacked. He did what he did. Maybe it wasn't necessary for him to pull the knife out and use the force that he did and, therefore, we have the guilty plea here today.

(N.T. Guilty Plea at 8-9) (emphasis added)

2

Following the colloquy, I sentenced petitioner to the agreed prison term. He did not file an appeal or challenge his plea or sentence until he filed his *pro se* PCRA petition March 3, 2015. I thereafter appointed him a PCRA attorney who filed a supplemental petition.

In the supplemental petition, petitioner asserts that on January 21, 2015, he learned from an immigration judge that he was subject to "mandatory deportation" because of his aggravated assault conviction. (PCRA Petition ¶ 11) He filed his *pro se* PCRA petition within sixty days of learning of this deportation consequence. Petitioner claims that plea counsel was ineffective for failing to advise him that by pleading guilty to aggravated assault he would be facing mandatory deportation upon his release, in violation of the requirements announced in Padilla v. Kentucky, issued seven months prior to petitioner's guilty plea. (Id. ¶¶ 5, 16) He also claims that counsel actually told him that he "saw no reason why Petitioner would be deported if he pled to the charges because Petitioner had been [in the U.S.] most of his life and he had a wife and three children in this county." (Id. ¶ 9) Petitioner asserts that he relied upon counsel's advice thinking he had little chance of removal. (Id. ¶ 10) It is petitioner's belief that because immigration law clearly indicated that petitioner was facing "mandatory deportation," or that deportation was "virtually assured" or at least a "very real probability," counsel was required under Padilla to tell him more than just that deportation was a potential or possible consequence of pleading guilty to aggravated assault. (Id. ¶¶ 21-25)

After the Commonwealth filed a response to the supplemental PCRA petition, I held an evidentiary hearing. Petitioner testified that he was born in Guyana and came to the U.S. with his parents in 1985, when he was five years old. Petitioner holds a Green Card, signifying him as a permanent resident. (N.T. PCRA Hearing at 4) Petitioner stated that his plea counsel discussed his legal status in 2010, in preparation for trial. Petitioner recalled that he had concerns that a conviction could result in deportation and discussed this with counsel. (Id. at 6) Petitioner agreed counsel brought up the subject with him because he discovered the U.S. Immigration and Customs Enforcement (ICE) had filed a detainer against him. (Id. at 14) According to petitioner, counsel told him "there is not a chance" or that "it is not likely" or that "there is no risk" he would be deported because he had been in the U.S. for so long, had children and was married. (Id. at 6, 14)

3

Petitioner admitted, however, that he answered "yes" to the question asked of him by the prosecutor at his guilty plea hearing whether he "underst[ood] that there may be consequences including the potential for removal from the United States as a result of a conviction for a felony." (Id. at 11) Petitioner explained that he was aware of possible immigration issues but that he didn't think it would involve "mandatory deportation" or be "as serious as it was." (Id. at 12, 18) He understood the prosecutor's mention of deportation to mean "there may be some collateral consequences to me taking the plea," which he interpreted to mean "there was a chance I was going to be deported." (Id. at 11)

Petitioner testified that when the prosecutor told him at his guilty plea hearing about the potential for deportation upon his conviction this was new information to him. (Id. at 15, 17) He further admitted that even though this was different than what his plea counsel allegedly told him earlier (that "there is not a chance" or "it is not likely" or "there is no risk" he would be deported), petitioner nevertheless agreed with the prosecutor that he understood there was a "potential for removal" upon conviction. (Id. at 15) Petitioner explained that he felt like he could not object or stop the proceedings because he had already signed his written plea colloquies. (Id. at 15, 17)

Petitioner's plea counsel testified he met with petitioner approximately ten times. He considered the charges against petitioner to be very serious and meritorious, including the attempted murder charge for which petitioner could have been sentenced to at least ten to twenty years. (Id. at 22-23) Upon discovering the ICE detainer, he discussed it with petitioner, informing him "you have got to realize that there is a possibility that you could be deported if you are convicted of any or all of these offenses or if you plead guilty." (Id. at 24) Petitioner's counsel elaborated on his recollection of his discussion with petitioner:

> I told him this is just something that you have to be aware of that there is a real possibility that you could be deported. He acknowledged that he understood. I explained I am not an immigration attorney. Obviously **I didn't advise him that it was any type of automatic or mandatory deportation so that is true.**

(Id. at 25) (bolding added) He denied ever telling petitioner that deportation "couldn't happen" or "was an impossibility." (Id.) He further testified that generally his normal practice where he

4

discovers an immigration detainer is to advise his client "in every case that there is a possibility of deportation." (Id. at 24-25)

Petitioner's attorney testified that he read Padilla v. Kentucky shortly after it was issued in March 2010 and that the case was also discussed at regular meetings on new law held in his office. (Id. at 28) He also explained that due to previously dealing with immigration issues, he had some familiarity with the deportable offense section of United States Code though he claimed no special knowledge or training beyond that. (Id. at 27) He testified that even before Padilla was issued, if he had a client with an immigration detainer he would tell them about the possibility of deportation "to cover my bases." (Id. at 26)

Plea counsel admitted that at the time of petitioner's guilty plea in 2010, he was familiar with the term "aggravated felony" used in immigration law and understood that such felonies were deportable. (Id. at 27) He did not understand that an aggravated felony was a "definite deportable" or "mandatory deportable" crime. (Id. at 27-28)

## Legal Discussion

### I. Ineffectiveness Claims

To establish ineffectiveness of counsel, a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner. Commonwealth v. Escobar, 70 A.3d 838, 841 (Pa. Super. 2013), *appeal denied*, 86 A.3d 232 (Pa. 2014) (citation omitted). Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different. Id. The failure to satisfy any prong of this test will cause the entire claim to fail. Commonwealth v. McDermitt, 66 A.3d 810, 813 (Pa. Super. 2013) (citation omitted). Counsel is presumed to be effective, and petitioner has the burden of proving otherwise. Id. (citation omitted).

Allegations of ineffectiveness in connection with a guilty plea do not warrant relief unless counsel's ineffectiveness caused an involuntary, unknowing or unintelligent plea. Escobar at 841(citation omitted). Where the defendant enters a plea on counsel's advice, the voluntary and

5

knowing nature of that plea turns on whether counsel's advice fell within the range of competence demanded of attorneys in criminal cases. Id.

Petitioner essentially makes alternative claims. The first is that counsel was ineffective for advising him that if he pled guilty there was no risk or it was unlikely he could be deported, in violation of the requirements of Padilla. Alternatively, to the extent it is believed that petitioner was advised and understood that by pleading guilty there was a risk of deportation, petitioner claims such advice or information was not sufficient under Padilla inasmuch as the advice failed to inform petitioner it was a near certainty he would be deported.

At the outset, I find that counsel did not tell petitioner "there [was] not a chance" or that "it [was] not likely" or that "there [was] no risk" he would be deported because he had been in the U.S. for a long time, had children and was married. This claim is not credible for a number of reasons. First, I do not believe counsel would have so advised petitioner because he was aware of the Padilla holding at the time of petitioner's plea, knew that aggravated felonies were deportable offenses under immigration law and whose routine practice, even before Padilla was issued, was to advise noncitizens of the potential risk of deportation. I found much more credible counsel's testimony that he informed petitioner that there was a "possibility" that he could be deported if convicted of any or all of the offenses charged.

Second, petitioner's responses at his guilty plea hearing contradict his claim that he initially understood there was no risk or it was unlikely his plea could result in deportation. As noted above, petitioner answered "yes" when the prosecutor questioned him if "underst[ood] that there may be consequences including the potential for removal from the United States as a result of a conviction for a felony." He admitted that he understood the prosecutor's mention of deportation meant "there may be some collateral consequences to me taking the plea" and "that there was a chance I was going to be deported."

I thus conclude that petitioner knew and understood when he pled guilty, that deportation was a possible consequence of his conviction. Accordingly, the issue presented is whether his guilty plea attorney was ineffective under Padilla v. Kentucky for advising him of the mere

6

possibility of deportation instead of that his deportation would be automatic or mandatory, or at least nearly certain.

*II. Federal Immigration/Deportation Law*

Before addressing Padilla and its Commonwealth progeny, it is necessary to understand the relevant immigration law and petitioner's status. An extensive list of deportable offenses is set forth in Title 8 of the United States Code at Section 1227(a), including for aliens convicted of aggravated felonies, as follows:

> **§ 1227. Deportable aliens.**
>
> (a) Classes of deportable aliens
>
> Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
>
> ...
>
> (2) Criminal offenses
>
> (A) General crimes
>
> ...
>
> (iii) Aggravated felony
>
> Any alien who is convicted of an aggravated felony at any time after admission is deportable.
>
> ...

8 U.S.C.A. § 1227(a).

"Aggravated felony" is defined as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C.A. § 1101(a)(43)(F). A "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C.A. §16(a). Section 1228 includes a number of provisions applicable to persons who have committed aggravated felonies, including that such persons are conclusively presumed deportable and further providing for their expedited removal, as follows:

7

**§ 1228. Expedited removal of aliens convicted of committing aggravated felonies.**

(a) Removal of criminal aliens

    (1) In general

The Attorney General shall provide for the availability of special removal proceedings at certain Federal, State, and local correctional facilities for aliens convicted of any criminal offense covered in section 1227(a)(2)(A)(iii) [aggravated felonies], ....

    ....

    (3) Expedited proceedings

        (A) Notwithstanding any other provision of law, the Attorney General shall provide for the initiation and, to the extent possible, the completion of removal proceedings, and any administrative appeals thereof, in the case of any alien convicted of an aggravated felony before the alien's release from incarceration for the underlying aggravated felony.

    ...

(c) Presumption of deportability

An alien convicted of an aggravated felony shall be **conclusively presumed to be deportable** from the United States.

8 U.S.C.A. § 1228 (emphasis added). Section 1229b(a)(3) removes any power from the Attorney General to cancel removal proceedings involving an alien convicted of an aggravated felony. 8 U.S.C.A. § 1229b(a)(3).

Thus, at the time he pled guilty, petitioner was pleading to at least one crime (aggravated assault) that clearly qualified as an aggravated felony under immigration law and as such petitioner was deportable. He was also subject to expedited removal proceedings to be initiated by the Attorney General, during which he would be "conclusively presumed" deportable. Finally, the Attorney General lacked any discretion to cancel his deportation proceeding.

### III. Padilla v. Kentucky

The defendant In Padilla, a lawful permanent resident of the U.S. for over forty years, faced deportation after pleading guilty to drug distribution charges. In state court proceedings, he claimed a violation of his Sixth Amendment right to effective assistance of counsel because counsel failed to advise him of the deportation consequence of pleading guilty. Counsel had advised him he did not need to worry about his immigration status because he had been in the U.S. for so long. 559 U.S. at 359. The Kentucky Supreme Court denied Padilla post-conviction relief, holding that the Sixth Amendment does not protect a defendant from counsel's erroneous deportation advice because deportation is merely a collateral consequence, as opposed to a direct consequence, of conviction. Id. at 359-60.

The Kentucky court's decision was ultimately reversed by the U.S. Supreme Court. In addressing the issue, the majority opinion, authored by Justice Stevens, initially surveyed immigration law and the significant 1996 amendments thereto, noting:

> Under contemporary law, if a noncitizen has committed a removable offense after [the 1996 amendments], his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. ...
>
> These changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part— indeed, sometimes the most important part — of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

Id. at 363-64 (footnotes omitted).

Given the stakes involved, the Court held that advice regarding the deportation consequence is not categorically removed from the ambit of the Sixth Amendment's right to competent counsel, refusing to classify the deportation consequence as either direct or collateral. Id. at 366. The court further held that counsel's representation fell below an objective standard of reasonableness which required counsel advise Padilla of the risk of deportation (Id. at 367), reasoning as follows:

In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. **This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.**

Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice Alito [in his concurrence]), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. **But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.**

Id. at 368-69 (bolding added) (footnote omitted). The Padilla Court later summarized its holding as follows:

It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the "mercies of incompetent counsel." *Richardson,* 397 U.S., at 771, 90 S. Ct. 1441. **To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation.** Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.

Id. at 374 (bolding added). Having found that Padilla sufficiently alleged a constitutional deficiency in counsel's representation, the Court remanded the case back to the lower court to determine whether he had been prejudiced. Id.

10

*IV. Pennsylvania Cases*

Since its issuance, our Superior Court has addressed ineffective assistance of counsel claims based upon Padilla in a number of cases, most notably Commonwealth v. Wah, 42 A.3d 335 (Pa. Super. 2012); Commonwealth v. McDermitt, 66 A.3d 810 (Pa. Super. 2013) and Commonwealth v. Escobar, 70 A.3d 838 (Pa. Super. 2013), *appeal denied*, 86 A.3d 232 (Pa. 2014). See also, Commonwealth v. Ghisoiu, 63 A.3d 1272 (Pa. Super. 2013), *appeal denied*, 74 A.3d 125 (Pa. 2013).

Just two months after Padilla was decided, defendant Wah, a resident alien, pled guilty to forgery and Medicaid fraud in an amount in excess of $10,000. He acknowledged at his guilty plea that his conviction could affect his immigration status. 42 A.3d at 337. He also acknowledged that his attorney had told him "to consult with an immigration attorney if you want[ ] to know the specific consequences of your guilty plea." Id. at 340. Wah filed a PCRA petition in which he alleged that his counsel was ineffective for failing to advise him of the immigration consequences of pleading guilty to the fraud charge. Under federal immigration law, fraud causing a loss in excess of $10,000 is classified as an aggravated felony, and as in this case, subjected Wah to removal proceedings. Id. at 337 (citing 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1101(a)(43)(M)(i)). Wah asserted that his guilty plea to fraud in excess of $10,000 essentially resulted in "mandatory, automatic deportation" and that his attorney was required to so advise him under Padilla. Id. The trial court rejected his claims and dismissed his PCRA petition.

In advancing his argument on appeal, Wah relied upon the distinction drawn by Justice Stevens in Padilla that appeared to require two different levels of advice from counsel depending upon the certainty of deportation; i.e. when the deportation consequences are "unclear or uncertain" and "the law not succinct and straightforward," then counsel need only advise the noncitizen client that pending criminal charges "may carry a risk of adverse immigration consequences." However, "when the deportation consequence is truly clear," counsel has a "duty to give correct advice." See, Padilla at 368-69. Wah claimed that the most cursory review of immigration law showed Medicaid fraud in an amount greater than $10,000 was an aggravated felony subjecting him to "automatic, mandatory deportation" and because this consequence was truly clear and not uncertain, his counsel owed him the higher duty to so advise him as opposed

11

to just advising him of a general risk of deportation. Wah at 340. Furthermore, he argued it was ineffectiveness for his attorney to have advised him to consult with an immigration attorney. Wah asserted such advice is only proper when the immigration consequences of the plea are not certain. Since the consequences of his plea were certain, counsel's responsibility was non-delegable. Id.

The Superior Court rejected Wah's arguments, distinguishing his case from Padilla and citing Justice Alito's concurring opinion therein, as follows:

> The statute at issue in *Padilla* provides for the deportation of any alien convicted of any drug violation, other than a single offense involving possession for one's own use of 30 grams or less of marijuana. *Padilla,* 130 S. Ct. at 1483, citing 8 U.S.C. § 1227(a)(2)(B)(i). As the Court in *Padilla* recognized, "The consequences of Padilla's plea could easily be determined from reading the removal statute...." *Id.* However, in acknowledging the complexity of federal immigration law, which is its own legal specialty, the Court stated:
>
>> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.
>
> *Id.* (footnote omitted).
>
> In fact, in Justice Alito's concurrence, he remarks that,
>
>> **Most crimes affecting immigration status are not specifically mentioned by the [Immigration and Nationality Act (INA)], but instead fall under a broad category of crimes, such as *crimes involving moral turpitude* or *aggravated felonies*. As has been widely acknowledged, determining whether a particular crime is an "aggravated felony" or a "crime involving moral turpitude [(CIMT)]" is not an easy task.**
>
> *Id.* at 1488 (brackets in original) (emphasis in original) (additional quotation marks and citations omitted). In this case, appellant was removable as an "aggravated felon" based upon his conviction of a crime involving fraud or deceit in which the loss to the victim exceeded $10,000. 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1101(a)(43)(M)(i). **Certainly, this matter is more complex than the statute at issue in *Padilla*, which mandates removal for virtually all controlled substances convictions.** We find that counsel acted within the range of professionally

12

competent assistance when he recommended that appellant seek the advice of an expert in immigration law if he desired to know the specific consequences of his guilty plea.

Wah at 340-41 (bolding added, italics in original).

The Superior Court next addressed an ineffective assistance of counsel claim under Padilla in Commonwealth v. McDermitt. There the defendant pled no contest to possession of a controlled substance with intent to deliver. During the plea, defendant was informed that his conviction rendered him deportable. In addition, the court was informed that defendant was already voluntarily going through the channels of deportation. McDermitt later filed a PCRA petition claiming ineffective assistance of counsel, which claim was dismissed by the trial court without a hearing. 66 A.3d at 812. On appeal, the Superior Court affirmed, rejecting McDermitt's argument that his attorney had a duty under Padilla to inform him he actually would be deported for his controlled substance conviction and not just that he was deportable. Id. at 814. The court summarily rejected McDermitt's claim, as follows:

> ... We will quote that case's [Padilla's] actual holding to refute appellant:
>
>> It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the "mercies of incompetent counsel." [McMann v.] Richardson, 397 U.S. [759], at 771, 90 S.Ct. 1441 [25 L.Ed.2d 763 (1970) ]. To satisfy this responsibility, we now hold that *counsel must inform her client whether his plea carries a risk of deportation.* Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.
>
> *Padilla*, 559 U.S. at ——, 130 S. Ct. at 1486 (emphasis added).
>
> Clearly, *Padilla* requires counsel to inform a defendant as to a risk of deportation, not as to its certainty. Moreover, even if *Padilla* required such information, it was not necessary in this case. At the time of his plea, appellant was already undergoing deportation and was well aware that he would be deported. ...

Id. (italics in original).

Notable by its absence in McDermitt was any discussion by the Superior Court panel of Justice Stevens' language in Padilla, acknowledged in Wah, regarding counsel's duty to give

13

"correct advice" in cases involving controlled substance crimes, since what qualified as a controlled substance crime was recognized as easily determined under immigration law and that the consequence of conviction for such a crime was clear (mandatory deportation), further suggesting that the advice counsel was required to give in such cases requires more than just that there is "a risk of deportation." See Padilla at 368-69.

Shortly after McDermitt was issued, the Superior Court in Commonwealth v. Escobar more fully addressed the issue of what circumstances require "correct advice" under Padilla. There, Escobar pled guilty to possession with intent to deliver a controlled substance. Prior to his plea, he was informed on the record that it was "likely and possible" deportation proceedings would be initiated against him. He also signed a written colloquy twice acknowledging deportation was possible. Finally, his plea counsel testified that he advised Escobar "he faced a substantial deportation risk" if he pled guilty. 70 A.3d at 840. After deportation proceedings were initiated, Escobar filed a PCRA petition seeking to withdraw his plea on the basis of ineffective assistance of counsel. The trial court granted him relief finding ineffective assistance under Padilla. In so deciding, the trial court seized upon Justice Stevens' language, "essentially interpret[ing] the words 'the duty to give correct advice is equally clear' to mean that, because the instant statute clearly made Escobar deportable by virtue of his drug conviction, counsel was required to tell Escobar that he would, in fact, be deported." Id. at 841.

On appeal, the Superior Court reversed, holding that Escobar's plea counsel was not ineffective for advising him that his guilty plea would "likely" result in deportation. Id. at 841-42. The court reasoned as follows:

> We disagree with the court's application of the law. **We do not agree that giving "correct" advice necessarily means counsel, when advising Escobar about his deportation risk, needed to tell Escobar he definitely would be deported.** It is true that 8 U.S.C. § 1227(a)(2)(B)(i) does lead to the conclusion that Escobar's PWID conviction certainly made him *deportable.* However, **whether the U.S. Attorney General and/or other personnel would necessarily take all the steps needed to institute and carry out Escobar's actual deportation was not an absolute certainty when he pled.** Given that Escobar did know deportation was possible, given that counsel advised him there was a substantial risk of deportation, and given that counsel told Escobar it was likely there would be deportation proceedings instituted against him, we find counsel's advice was, in fact, correct.

14

Id. at 841 (bolding added, italics in original). The court then addressed the tension between its holding and language in Padilla suggesting that "correct advice" requires plea counsel in some cases advise a noncitizen that deportation may be certain, explaining as follows:

> In reaching our result, we are mindful that the *Padilla* court specifically considered 8 U.S.C. § 1227(a)(2)(B) [concerning the deportability of aliens convicted of controlled substance crimes], the same immigration/deportation statute at issue in the present case. When it did so, the court concluded that the statute clearly made Padilla "*eligible* for deportation" and that "his deportation was *presumptively* mandatory." *Padilla*, 130 S. Ct. at 1483 (emphasis added). These remarks by the court were consonant with the terms of the statute indicating most drug convictions render a defendant *deportable*. **We do not read the statute or the court's words as announcing a guarantee that actual deportation proceedings are a certainty such that counsel must advise a defendant to that effect.**
>
> . . .
>
> **We do acknowledge that parts of the *Padilla* opinion contain language arguably supporting the notion that plea counsel in some cases may have a duty to provide a rather certain indication of deportation.** For example, at one point, the *Padilla* court agreed competent counsel would have told Padilla he was "subject to automatic deportation." *Id.* at 1478. At another point, the court indicated the instant deportation statute "commands" deportation for virtually all drug convictions. *Id.* at 1483. The opinion likewise observes that deportation for certain convictions is "practically inevitable." *Id.* at 1480.
>
> **Even still, we think the court's overall emphasis was that the deportation statute in question makes most drug convicts subject to deportation in the sense that they certainly become deportable, not in the sense that plea counsel should know and state with certainty that the federal government will, in fact, initiate deportation proceedings.**
>
> **Ultimately, when announcing its holding, the *Padilla* court opined, "[W]e now hold that counsel must inform [the] client whether [the] plea carries a risk of deportation." *Id.* at 1486.** Here, counsel did advise Escobar his plea carried a risk of deportation. In fact, counsel told Escobar deportation proceedings were likely. Present counsel's advice was within the range of competence demanded of attorneys in criminal cases.

Id. at 842 (bolding added, italics in original).

*V. Application of Padilla and the Superior Court Cases*

The Superior Court in Wah rejected the same claim advanced by petitioner here, which was that under Padilla, his deportation situation was truly clear and required that counsel provide him correct advice; i.e. that because he pled guilty to fraud involving more than $10,000 - a crime readily classified as an aggravated felony under immigration law - he would be subject to "mandatory, automatic deportation" and should have been so advised. Wah at 340. As noted, the Wah court, relying on Padilla, reasoned that the determination of what crimes qualify as an aggravated felony under immigration law is "not an easy task" and "more complex" (than determination of a controlled substance crime). Id. at 340-41. Our Superior Court in Wah thus classified deportation situations involving aggravated felonies as "unclear and uncertain" within the Padilla framework.[3] Under Padilla, deportation situations falling into this category only require that counsel advise the noncitizen client that the conviction "may carry a risk of adverse immigration consequences." Padilla at 374. Based upon this decision, petitioner's counsel was not ineffective here when he advised petitioner there was only a possibility he could be deported if he pled guilty to the crimes charged, including to aggravated assault, a crime clearly qualifying as an aggravated felony under immigration law.

To the extent there still remained a question after Wah as to whether plea counsel owed some greater duty under Padilla beyond merely advising a noncitizen client about a general risk or possibility of deportation, the Superior Court's decisions in McDermitt and Escobar answered that question in the negative. The court in McDermitt basically reiterated the Wah holding that where a noncitizen pleads guilty to a potentially deportable crime – even to a controlled substance crime which Padilla and Wah acknowledged was a conviction for which deportation was nearly certain and the relevant statute succinct and clear - the only duty owed by counsel is to inform the noncitizen of "a risk of deportation, not as to its certainty." McDermitt at 814.

The court in Escobar announced the same result addressing the issue in greater depth and retreating from language in Padilla suggesting that there were convictions that would ostensibly involve "automatic deportation" or situations where deportation was "command[ed]" or

---

[3] Discovering the deportation consequence of the aggravated felony arising from Medicaid fraud in Wah required about the same level of expertise as did discovery of the aggravated felony in this case. As I note below in Part VI, I disagree that this discovery required any specialized level of legal expertise.

16

"practically inevitable." Id. at 842 (citing Padilla). Escobar essentially rejected the notion that mandatory deportation or nearly certain deportation can be a consequence of a guilty plea, finding only that a conviction for a qualifying crime renders the noncitizen "eligible" for removal proceedings and thus merely "deportable," reasoning that whether all the necessary steps required to institute and carry out deportation is "not an absolute certainty" when the plea is rendered. Id. at 841, 842.

Under Escobar, petitioner was merely eligible for removal proceedings when he entered his guilty plea to a deportable offense and as such, he was not subject to mandatory or automatic deportation given that it was not an "absolute certainty" the necessary steps to deport him would be undertaken; whether ICE would initiate and pursue petitioner's actual deportation could not be determined at the time of his plea. Id. at 841. Since plea counsel here could not have stated with certainty that the federal government would in fact initiate removal proceedings against petitioner, counsel could not have been ineffective for failing to provide such advice.

### VI. Padilla and Other Jurisdictions

I would be remiss to note that our Superior Court's decisions interpreting Padilla are seemingly at odds with those of many other jurisdictions. For example, most jurisdictions appear to reject the finding in Escobar that there is essentially no such thing as mandatory or nearly mandatory deportation since it can never be certain at the time of conviction whether the federal government will later initiate removal proceedings. Instead, foreign courts appear to recognize the non-fiction that removal proceedings are a mere formality and that a person convicted of a deportable offense, including for an aggravated felony, will almost certainly be deported. See e.g., Mendoza v. United States, 690 F.3d 157, 158 (3d Cir. 2012) (indicating that a guilty plea to an aggravated felony leads to "mandatory deportation"); United States v. Mancebo, 2014 WL 3385071, at *4 (M.D. Pa. July 9, 2014) ("deportation is an almost-certain consequence of certain criminal convictions" including aggravated felonies); Encarnacion v. State, 763 S.E.2d 463, 465 (Ga. 2014) ("the applicable federal statutes make it clear that a conviction for an aggravated felony automatically triggers the removal consequence and almost always leads to deportation"); Keserovic v. State, 345 P.3d 1024, 1027 (Id. App. 2015) (misdemeanor theft conviction which was an aggravated felony under immigration law subjected the defendant to mandatory or

17

virtually certain deportation); and People v. Corporan, 22 N.Y.S.3d 441, 442 (N.Y. App. 2016) (a guilty plea to an aggravated felony "triggered mandatory deportation under federal law").

Furthermore, the Superior Court's holding in Wah - that plea counsel need only advise a noncitizen pleading guilty to an aggravated felony that there is a risk of deportation – is also at odds with decisions issued by many other jurisdictions, which hold that since an aggravated felony results in mandatory or near mandatory deportation, counsel is under a duty to provide clear advice as to that consequence and that it is ineffective assistance to advise the noncitizen that there is merely a risk or possibility of deportation. See e.g. United States v. Bonilla, 637 F.3d 980, 984 (9th Cir. 2011) ("[a] criminal defendant who faces almost certain deportation [for committing an aggravated felony] is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty"); Encarnacion v. State, 763 S.E.2d 463, 466 (Ga. 2014) ("where, as here, the law is clear that deportation is mandatory [for the aggravated felony of burglary] ... an attorney has a duty to accurately advise his client of that fact" and it is not sufficient that the client is merely advised deportation might occur or was a risk of conviction); Ortega-Araiza v. State, 2014 WY 99, 331 P.3d 1189 (Wyo. 2014) (a plea agreement executed by the alien defendant, which advised the plea "may" result in negative immigration consequences including potential deportation, was insufficient to cure the prejudice arising from defendant counsel's deficient performance in failing to specifically advise defendant of his almost certain deportation if he entered guilty plea to aggravated felony for committing a crime of violence); State v. Nkiam, supra at 872 (N.C. Ct. App. 2015) (deportation consequences of guilty plea to robbery crimes, which were plainly indicated as aggravated felonies under federal law and presumptively mandatory, were truly clear and thus trial counsel had a duty to give correct advice and not just advise defendant that charges may carry a risk of adverse immigration consequences); State v. Kostyuchenko, 8 N.E.3d 353, 356-57 (Ohio App. 2014) (counsel breached duty by advising his client only that there may be a consequence of deportation where defendant pled guilty to an aggravated felony (crime of violence), instead, counsel was obligated to advise defendant that his deportation would be mandatory) and Cano v. State, 112 So. 3d 646, 648 (Fla. App. 2013) (noncitizens who, pursuant to a state rule had been advised by their sentencing judges that they "may" or "could" be deported if they pled guilty, could state a claim for relief under Padilla if they could establish, among other things, that the

18

law subjected them to "virtually automatic" deportation and that the "presumptively mandatory" consequence of deportation was clear from the face of the immigration statute). See also, Mendoza v. United States at 158 (3d Cir. 2012) (suggesting that the failure by counsel to apprise defendant that his guilty plea to an aggravated felony would lead to mandatory deportation was deficient representation).

Were it this court's job to dispose of petitioner's ineffective assistance of counsel claim based solely upon the U.S. Supreme Court's decision in Padilla - prior to our Superior Court's narrow interpretation in Wah, McDermitt and Escobar - I would have found counsel to have been ineffective under Padilla, as have the courts of so many other jurisdictions (cited above).

The determination of the deportation consequence for an aggravated assault conviction in this case was, is in this court's estimation, succinct, clear, explicit and easily discernable from reading the plain text of the United States Code. The list of deportable offenses, although extensive, is clearly set out at 8 U.S.C. § 1227(a) and includes aggravated felonies. The list of twenty-one types of aggravated felonies triggering automatic removal is also clearly set out at 8 U.S.C. 1101(a)(43)(A-U) and includes "crimes of violence," for which aggravated assault clearly qualified. Title 8, Section 1228(c) provides for a conclusive presumption of deportation for all aliens who commit aggravated felonies. Finally, Title 8, Section 1229b(a)(3) removes any power from the Attorney General to cancel deportation proceedings for persons convicted of aggravated felonies.

Thus, discovering that a noncitizen's aggravated assault conviction is an aggravated felony for which deportation is virtually mandatory does not require any kind of special legal expertise on the part of counsel. See, State v. Nkiam, 778 S.E.2d 863, 870 (N.C. App. 2015) (noting that courts have generally held that if counsel can discern the deportation consequences from the plain language of the U.S. Code, than the consequences are clear; if counsel must go beyond the statute or if there are inconsistent rulings or law, however, the consequences are unclear (citing cases from foreign jurisdictions)).

Because I believe the deportation consequence in this case was truly clear, and the immigration law succinct and straightforward, counsel's duty was to provide him correct advice,

which this court would interpret to require he advise petitioner that at the least, his deportation upon conviction was a near certainty or that he would be conclusively presumed deportable. I would thus have held that counsel's advising of the mere possibility of deportation to have been ineffective.

## *VI. Conclusion*

This court is bound, however, by the Superior Court holdings set forth above. As such, I am constrained to hold that because counsel's advice was not deficient under Wah, McDermitt and Escobar, petitioner has not established counsel was ineffective and as such, his plea was voluntary, knowing and intelligent. Accordingly, I enter the following:

## **ORDER**

AND NOW, this __17th__ day of February, 2016, the Petition filed by Kevin Forde seeking relief under the Post-Conviction Relief Act is hereby DENIED. Petitioner is notified of his right to appeal from this Order within thirty (30) days of its entry.

BY THE COURT:

Jeannine Turgeon, Judge

Distribution: Allow 3:30 pm

Elizabeth Hoffman, Esq. – 106 Walnut Street, Harrisburg, PA 17101

PCRA Attorney – District Attorney's Office

Kevin Forde – # 041062609, York County Prison, 3401 Concord Road, York Pa. 17402
**By Certified Mail - Return Receipt Requested**

20